IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CYNTHIA G. COOK,                          )
                                          )
                    Plaintiff,            )
                                          )
vs.                                       ) Case No.  11-2184-KHV-KGS
                                          )
OLA FAUCHER,                              )
                                          )
                    Defendant.            )
_____)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

The amended complaint filed by the plaintiff, Cynthia G. Cook, asserts two claims:  (1) a claim against the defendant, Ola Faucher, in her official capacity, for violation of the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 621, et seq.; and (2) a claim against Ms. Faucher, in both her official capacity and her personal capacity, for deprivation of a property interest without due process, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.  (Doc. #10)  Ms. Faucher has filed a motion to dismiss both of the claims against her.  (Doc. #13)  For the reasons discussed below, the motion to dismiss must be denied in its entirety.

### I. THE ADEA CLAIM

Ms. Faucher contends that the ADEA claim should be dismissed because:  (1) she is not an "employer" under the ADEA; and (2) sovereign immunity bars the ADEA claim.  (Doc. #14 at pp. 4-7)  These two arguments will be addressed in order.

1

### A. Ms. Faucher's Status As An "Employer" Under The ADEA

Ms. Faucher argues that "[f]ollowing Tenth Circuit precedent, this Court has repeatedly found <u>individual</u> supervisor liability improper under the ADEA's definition of employer." (Doc. #14 at p. 5. Emphasis added.) This argument must fail because Ms. Faucher is being sued in her <u>official</u> capacity, not her individual capacity.

The importance of the distinction between official-capacity claims and individual-capacity claims was highlighted in <u>Haynes v. Williams</u>, 88 F.3d 898 (10th Cir. 1996), where the issue of individual supervisor liability was comprehensively analyzed by the Tenth Circuit. The controlling issue in <u>Haynes</u> was "can an individual supervisor be held <u>personally</u> liable under Title VII? 88 F.3d at 899. Emphasis added. The <u>Haynes</u> panel answered this issue in the negative, relying on the prior decision in <u>Sauers v. Salt Lake County</u>, 1 F.3d 1122, 1125 (10th Cir. 1995), which held:

> Under Title VII, <u>suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate</u>. The relief granted under Title VII is against the <u>employer</u>, not individual employees whose actions would constitute a violation of the Act. We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly. Therefore, because the suit against [plaintiff's supervisor] could proceed only in his official capacity, it operated as a suit against [plaintiff's employer] itself . . .
>
> . . . <u>[A]n individual qualifies as an 'employer' under Title VII</u> [solely for purposes of imputing liability to the true employer] <u>if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, or conditions of employment</u>. In such a situation, the individual operates as the alter ego of the employer, and the employer is liable for the unlawful employment practices of the individual without regard to whether the employer knew of the individual's conduct.

2

Emphasis added in part.

The Haynes panel also discussed the prior decision in Brownlee v. Lear Siegler Management Services Corp., 15 F.3d 976 (10th Cir. 1994), cert. denied, 512 U.S. 1237, which specifically involved a claim under the ADEA. The Haynes court explained:

> Considering its analytical context and expository function . . . Brownlee's reference to the agent's potential status as employer need not be read as a deviation from prior precedent. . . . Thus, Sauers' specific holding, that 'individual capacity suits are inappropriate,' 1 F.3d at 1125, did not preclude (or entail) Brownlee's incidental statements about agents generally.

88 F.3d at 900. Emphasis added.

Here, Ms. Faucher is being sued under the ADEA in her official capacity, not her individual capacity. (Doc. #10 at p. 5) Furthermore, Ms. Faucher is alleged to be serving in a supervisory position, and "has been delegated all decision-making authority in regard to support staff employees at KU." (Doc. #10 at p. 2) Accordingly, the claim against Ms. Faucher under the ADEA is consistent with the Tenth Circuit's decisions in Sauers, Haynes, and Brownlee. See also Wight v. Downing, 2008 WL 303918 at * 3 (D. Utah 2008) [refusing to dismiss ADEA claims against individual defendants in their official capacity for non-monetary relief].

## B. Sovereign Immunity

Ms. Faucher further contends that the "Eleventh Amendment doctrine of sovereign immunity bars actions for damages against a State, its agencies and its officials acting in their official capacities." (Doc. #14 at p. 5. Emphasis added in part.) This argument must also fail because the ADEA claim against Ms. Faucher does not

3

seek monetary damages.  Consequently, the ADEA claim falls within one of the recognized exceptions to the doctrine of sovereign immunity.

As Judge Lungstrum explained in Smith v. Kansas, 574 F. Supp. 2d 1217 (D. Kan. 2008):

> The Supreme Court has recognized three exceptions to a state's sovereign immunity. . . .  [U]nder Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908), a party may sue individual state officers in federal court in their official capacity for prospective injunctive relief.

574 F. Supp. 2d 1220, citing Hill v. Kemp, 478 F.3d 1236 (10th Cir. 2007).  See also State Police Automatic Retirement Assn. v. Difava, 317 F.3d 6, 12 (1st Cir. 2003) [allowing ADEA claims to be asserted in federal court against an individual state officer].

Here, Ms. Cook only seeks prospective injunctive relief under the ADEA against Ms. Faucher, in her official capacity, in the form of reinstatement of Ms. Cook's employment with the University of Kansas.  (Doc. #10 at p. 5)  "Reinstatement of employment is a form of prospective equitable relief that is within the doctrine of Ex parte Young."  Meiners v. University of Kansas, 359 F.3d 1222, 1232 (10th Cir. 2004).  See also Ellis v. University of Kansas Medical Center, 163 F.3d 1186, 1198 (10th Cir. 1998) [holding that "the Ex Parte Young doctrine may be invoked here for Ellis' claim for prospective injunctive relief against the defendant state officials acting in their official capacities"].

## II.  THE § 1983 DUE PROCESS CLAIM

Ms. Faucher contends that Ms. Cook's due process claim under § 1983 fails to state a claim upon which relief could be granted because:  (1) Ms. Cook has failed to sufficiently allege a protected property interest in her continued employment; and (2)

Ms. Cook's § 1983 claim is barred by the applicable statute of limitations. (Doc. #14 at pp. 8-13) These two arguments will be addressed in order.

### A. Ms. Cook's Protected Property Interest

In <u>Anglemeyer v. Hamilton County Hosp.</u>, 58 F.3d 533 (10th Cir. 1995), the Tenth Circuit explained the starting point for analyzing a property interest claim under the Fourteenth Amendment and § 1983:

> The Fourteenth Amendment's procedural due process protections apply only to an individual deprived of a recognized property or liberty interest. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Property interests are created not by the Constitution itself, but may be defined by independent sources such as <u>state statutes</u>, regulations, municipal ordinances, university rules, and even express or implied contracts.

58 F.3d at p. 536. Emphasis added.

Here, Ms. Cook contends that she had a protected property interest in her continuing employment based upon several Kansas statutes, specifically, the Kansas Civil Service Act, K.S.A. 75-2925, et seq., and K.S.A. 76-715a. From 1980 through 2007, Ms. Cook was employed by the University of Kansas as a permanent classified employee under the Kansas Civil Service Act. (Doc. #10 at ¶¶ 6-8) A permanent classified employee under the Kansas Civil Service Act has a right to continued employment in the absence of a legitimate cause for termination, and this right is protected by the constitutional guarantee of due process. <u>Prager v. Kansas Dept. of Revenue</u>, 271 Kan. 1, 40-43, 20 P.3d 39 (1995) and cases cited therein. As the Kansas Supreme Court has explained:

> The Kansas Civil Service Act (KCSA), K.S.A. 75-2925 et seq., controls a classified employee's employment status.

5

> <u>The KCSA affords the right of continued employment in the absence of a valid cause for termination</u>.  A classified civil service employee's relationship to the State is one of statutory status.  Statutes and the regulations of the appropriate agency or agencies affect the relationship.  The relationship is generally not contractual.

<u>Wright v. Kansas Water Office</u>, 255 Kan. 990, Syl.¶ 1, 881 P.2d 567 (1994).  Emphasis added.

In 2005, the Kansas Legislature enacted K.S.A. 76-715a, which allowed the University of Kansas, with the approval of the Kansas Board of Regents, to convert all classified staff positions at the University to unclassified positions.  (Doc. #10 at ¶ 7)  An unclassified employee under the Kansas Civil Service Act is an at-will employee, and has no protected right to continued employment.  <u>Whitmore v. State of Kansas</u>, 3 Kan. App. 2d 101, 590 P.2d 106 (1979).  However, K.S.A. 76-715a specifically states:

> Implementation of this section shall not cause a salary reduction <u>or layoff of any classified employee</u>.

Emphasis added.

The meaning of this provision becomes clear when it is viewed in light of the Kansas Legislature's attempt to declassify the positions held by the employees in the Kansas Water Office in 1984.  In interpreting a Kansas statute, the court must presume that "the legislature . . . acted with full knowledge and information as to the subject matter of the statute, as to prior and existing legislation on the subject of the statute, and as to judicial decisions with respect to prior and existing law."  <u>Phelps v. Hamilton</u>, 59 F.3d 1058, 1071 (10th Cir. 1995).

The attempt by the Kansas Legislature to declassify the positions in the Kansas Water Office was the subject of the Kansas Supreme Court's decision in <u>Darling v.

6

Kansas Water Office, 245 Kan. 45, 774 P.2d 941 (1989), where the factual situation was described as follows:

> Plaintiffs herein were classified employees of the Kansas Water Office (KWO). In 1984, the Kansas Legislature enacted Senate Bill No. 501 (L. 1984, ch. 285), which changed plaintiffs' jobs from being in the classified service of the Kansas Civil Service Act, K.S.A. 75-2925 et seq., to being unclassified and directed their termination. Plaintiffs were terminated and appealed their terminations to the Civil Service Board, which held it had no jurisdiction as plaintiffs were no longer classified employees.

245 Kan. at 45.

In the course of its decision in Darling, the Kansas Supreme Court summarized the position of the defendants (the Kansas Water Office and its Director) in this way:

> Defendants concede that a classified state employee has a property right in continued employment cognizable under the Fourteenth Amendment to the United States Constitution. . . . Defendants contend, however, that <u>Senate Bill No. 501 lawfully terminated that right in plaintiffs</u>, and thus, the same was not in existence when plaintiffs were terminated.

245 Kan. at 48-49. Emphasis added.

The Kansas Supreme Court then flatly rejected the defendants' contention, explaining:

> States are under no obligation to create property rights in their employees' employment through enactment of civil service legislation. <u>However, once a state has elected to do so, due process rights attach.</u>
>
> In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985), it is stated:
>
> 'While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest,

7

>once conferred, without appropriate procedural safeguards.' [Citations omitted.] (Emphasis supplied.)
>
>Before proceeding further, it should be emphasized that the case before us does not involve elimination of a state agency, reduction of positions authorized for a state agency, consolidation of two agencies into one, transfer of functions from one agency to another, or any other situation involving elimination of particular positions. Further, <u>this action does not involve the State's right to declassify a position prospectively, effective only as to employees to be hired in the future. Had Senate Bill No. 501 declassified the positions without the mandatory terminations and grandfathering in, to existing employees, their civil service rights</u>, the case herein would not be before us.
>
>If the defendants' position is correct that the State can selectively declassify and terminate free of civil service requirements, then the whole concept of civil service is a sham. There is no real protection afforded by the civil service act.

245 Kan. at 49. Emphasis added.

When viewed in light of the decision in <u>Darling</u>, the meaning of the provision in K.S.A. 76-715a that "[i]mplentation of this section shall not cause a . . . layoff of any classified employee" becomes clear. By adding this provision, the Kansas Legislature intended, in the words of <u>Darling</u>, to exercise its "right to declassify a position <u>prospectively</u>, effective only as to employees to be hired <u>in the future</u>." 245 Kan. at 49. Emphasis added. Or to put it another way, the Kansas Legislature intended, again in the words of <u>Darling</u>, to allow the University of Kansas to declassify its staff positions, while at the same time "<u>grandfathering in</u>, to existing employees, their civil service rights." 245 Kan. at 49. Emphasis added.

Applying K.S.A. 76-715a to the allegations here, Ms. Cook was employed by the University as a permanent classified employee in 2005 when the statute was enacted.

8

Consequently, when the University subsequently declassified all staff positions in 2007, that declassification only operated prospectively, effective only as to employees hired in the future.  Existing classified employees like Ms. Cook were "grandfathered in" to their civil service rights.  As a result, Ms. Cook retained her right to continued employment in the absence of a legitimate cause for termination, and this right remained protected by the constitutional guarantee of due process.  This result is constitutionally required because, as the United States Supreme Court has explained:

> 'While the legislature may elect not to confer a property right in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'

Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541 (1985).

Ms. Faucher further contends that even if the implementation of K.S.A. 76-715a caused or allowed Ms. Cook's layoff, it did not violate her right to due process because "[t]he Civil Service Act already made an exception for layoffs."  (Doc. #14 at p. 11)  The case cited by Ms. Faucher, Harton v. Sperry, 19 Kan. App. 2d 259, 869 P.2d 752 (1993), does not support her contention.  The plaintiff in Harton was a classified employee who was subjected to a reallocation, but not a demotion.  The Kansas Court of Appeals held that the plaintiff had not been deprived of his due process rights, explaining:

> The question can be simply stated:  <u>If Harton were in fact demoted, he was entitled to the specific protections of K.S.A. 75-2949, which were not provided</u>.  If, on the other hand, Harton were subjected to a reallocation rather than a demotion, he was given all the process to which he was due.  Compare K.A.R. 1-2-31; 1-2-69; 1-2-7; and 1-4-7.

19 Kan. App. 2d at 262.  Emphasis added.

9

In contrast to the plaintiff in Harton, Ms. Cook was subjected to a termination of her employment, not a reallocation of her position. Consequently, in the words of Harton, Ms. Cook "was entitled to the specific protections of K.S.A. 75-2949, which were not provided." Thus, Harton actually supports Ms. Cook's contention that she had a right to continued employment in the absence of a legitimate cause for termination, and this right was protected by the constitutional guaranty of due process.

### B. The Statute Of Limitations Defense

Ms. Faucher further contends that Ms. Cook's § 1983 claim accrued in January of 2009, and therefore the § 1983 claim is time-barred by the applicable two-year limitation period in K.S.A. 60-513. (Doc. #14 at pp. 11-12)  "[T]he claims of a civil rights plaintiff accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." Delatorre v. Minner, 238 F. Supp. 2d 1280, 1286 (D. Kan. 2002), citing Beck v. City of Muskogee Police Dept., 195 F.3d 553, 557 (10th Cir. 1999).

Ms. Cook alleges that she did not know, nor should she have known, that her constitutional right of due process had been violated until August of 2009. Specifically, Ms. Cook alleges that she did not know, nor should she have known, that her projected layoff would result in her termination from employment until August of 2009, when she was not selected for placement in the position as an Information Specialist I - Help Desk Team Lead. (Doc. #10 at ¶ 16)  This allegation is based on the University's Layoff Policy, which provides that a projected layoff does not automatically result in termination from employment. Under the University's Layoff Policy, a projected layoff may result in "[p]lacement in a position in a different salary grade, band and level than previously held (required qualifications must be met)." (Doc. #10 at ¶ 10)

10

Pursuant to the University's Layoff Policy, Ms. Cook applied for placement in two positions with a different salary grade, band, and level than her position as an Information Specialist.  One of these positions for which Ms. Cook applied was a position as an Information Specialist I - Help Desk Team Lead.  (Doc. #10 at ¶ 11)  Ms. Cook was interviewed for the Team Lead position in August of 2009, but she was not selected for placement in the Team Lead position.  (Doc. #10 at ¶ 14)

Ms. Cook thus alleges that she did not know until August of 2009, nor should she have known, that her projected layoff under the University's Layoff Policy would necessarily result in her termination from employment, since she was not advised until August of 2009 that she would not be selected for placement in the Team Lead position. (Doc. #10 at ¶¶ 10-16)  If Ms. Cook had been selected for placement in the Team Lead position in August of 2009, her projected layoff under the University's Layoff Policy would not have resulted in her termination from employment.  Accordingly, Ms. Cook's allegation as to when she knew, or should have known, that her constitutional right of due process had been violated satisfies the "plausibility standard" required by Fed. Rule Civ. Pro. 8.  See <u>Gee v. Pacheo</u>, 627 F.3d 1178, 1184-85 (10th Cir. 2010).

## **CONCLUSION**

For the reasons discussed above, the motion to dismiss must be denied in its entirety.

Respectfully Submitted:

S<span/>LOAN, E<span/>ISENBARTH, G<span/>LASSMAN,
    M<span/>C<span/>E<span/>NTIRE & J<span/>ARBOE, L.L.C.
1000 Bank of America Tower
534 S. Kansas Ave.
Topeka, Kansas 66603
Telephone    (785) 357-6311
Fax               (785) 357-0152

 s/Alan V. Johnson _____
Alan V. Johnson, KS #9992
ajohnson@sloanlawfirm.com

12

## **CERTIFICATE OF SERVICE**

I herby certify that on the 28th day of June, 2011, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following parties:

Michael C. Leitch, Kansas Sup. Ct. # 19588
Associate General Counsel and
Special Assistant Attorney General
Room 245 Strong Hall
1450 Jayhawk Blvd.
Lawrence, KS 66045
Tel: (785) 864-3276
Fax: (785) 864-4617
Email: mleitch@ku.edu
*Attorney for Defendants University of Kansas and*
*Ola Faucher*

**I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: NONE**

    s/Alan V. Johnson
Alan V. Johnson, KS #9992
SLOAN, EISENBARTH, GLASSMAN,
    MCENTIRE & JARBOE, L.L.C.
1000 Bank of America Tower
534 S. Kansas Ave, Suite 1000
Topeka, Kansas 66603
Telephone   (785) 357-6311
Fax              (785) 357-0152
ajohnson@sloanlawfirm.com